**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

_____

IN RE:
GCP CT SCHOOL ACQUISITION, LLC, et al.[1],        Chapter 7
            DEBTOR                                 Case No. 09-11846-WCH

_____

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

The matter before the Court is the "Request of Tenucp Property LLC for Payment of Administrative Expense [Lease of GCP Burbank LP]" filed by Tenucp Property LLC ("Tenucp"), the "Objection to Administrative Claim of Tenucp Property LLC" filed by Lynne F. Riley (the "Trustee"), Chapter 7 trustee of GCP CT School Acquisition, LLC (the "Debtor") and its various affiliates (the affiliates, and collectively with the Debtor, the Debtors), and the "Response of Tenucp

---

[1] The Debtors in these cases are: GCP CT School Acquisition, LLC, Case No. 09-11846-WCH; GCP CSB Burbank, LLC, Case No. 09-12066-WCH; GCP CSB Burbank, LP, Case No. 09-12068-WCH; GCP CSB Pomona, LLC, Case No. 09-12086-WCH; GCP CSB Pomona, LP, Case No. 09-12087-WCH; GCP Farmington, LLC, Case No. 09-11972-WCH; GCP CSB Denver, LLC, Case No. 09-12077-WCH; GCP Stratford, LLC, Case No. 09-11970-WCH; GCP Miami, LLC, Case No. 09-12081-WCH; GCP Baltimore, LLC, Case No. 09-12070-WCH; GCP Orlando, LLC, Case No. 09-12083-WCH; GCP Palm Beach Gardens, LLC, Case No. 09-12084-WCH; GCP Tampa, LLC, Case No. 09-12088-WCH; GCP Atlanta, LLC, Case No. 09-12024-WCH; GCP Atlanta II, LLC, Case No. 09-12027-WCH; GCP CSB Boston, LLC, Case No. 09-12064-WCH; GCP Las Vegas, LLC, Case No. 09-12080-WCH; GCP Chicago, LLC, Case No. 09-12074-WCH; GCP Hasbrouck Heights, LLC, Case No. 09-12078-WCH; GCP Cherry Hill, LLC, Case No. 09-12072-WCH; GCP Chicago II, LLC, Case No. 09-12073-WCH; GCP Pittsburg, LLC, Case No. 09-12085-WCH; GCP Westbury, LLC, Case No. 09-12089-WCH; GCP CSB Austin, LLC, Case No. 09-12034-WCH; GCP Nashville, LLC, Case No. 09-12082-WCH; GCP Charlotte, LLC, Case No. 09-12071-WCH; GCP CSB Houston, LLC, Case No. 09-12079-WCH; GCP CSB Dallas, LLC, Case No. 09-12076-WCH; GCP CSB Dallas School, LP, Case No. 09-12075-WCH; and GCP Arlington, LLC, Case No. 09-12021-WCH.

Property to Trustee's Objection to Request for Payment of Administrative Claim" filed by Tenucp on remand from the United States Bankruptcy Appellate Panel for the First Circuit (the "Panel"). On October 28, 2009, I denied Tenucp's request, finding that it received adequate notice of the Trustee's intention to reject the real estate lease effective May 23, 2009 through various pleadings filed in this case. On appeal, the Panel affirmed my order to the extent that I had the equitable authority to establish a retroactive rejection date, but found I abused my discretion establishing that date as May 23, 2009. Accordingly, the matter was remanded for determination of an appropriate effective date. For the reasons set forth below, I will overrule the Trustee's objection in part, establish June 4, 2009 as the rejection date, and allow Tenucp an administrative expense claim in the amount of $6,508.65.

## II. **BACKGROUND**[2]

Prior to their bankruptcy filings, the Debtors operated radio and television broadcasting schools in sixteen states.[3] Teuncp was the landlord under a written real estate lease (the "Lease") with one of the Debtor's affiliates, GCP CBS Burbank LP ("GCP Burbank"), for 6,694 square feet of office space in Universal City, California.[4]

Beginning in February 2009, the Debtor's secured lender, National City Bank ("National City"), effectuated a series of offsets against the Debtors' operating accounts, forcing the schools to

---

[2] The facts as recited in this section are taken from the Panel's decision. *See Tenucp Property LLC v. Riley (In re GCP CT Shool Acquisition, LLC)*, 429 B.R. 817 (B.A.P. 1st Cir. 2010).

[3] *In re GCP CT Shool Acquisition, LLC*, 429 B.R. at 820.

[4] *Id.* at 821.

2

shut down abruptly with just a few weeks remaining in the semester.[5] Shortly thereafter, the Debtors commenced their respective Chapter 7 cases, which were later substantively consolidated.[6]

Immediately following her appointment, the Trustee negotiated with some of the Debtors' equity holders for funding to conduct a so-called "teach-out" so that the schools could reopen for a limited time to enable enrolled students to complete the remaining class hours necessary to earn certificates of completion.[7] In order to effectuate the teach-out, the Trustee filed a motion (the "Operating Motion") seeking an order: (1) authorizing her to operate the Debtors' business for a limited period of time; (2) approving an agreement (the "Investment Agreement") with the equity holders to provide funding for the teach-out in accordance with the proposed budget; and (3) allowing payment of certain pre-petition wage and benefit claims of the Debtors' employees as necessary to effectuate the teach-out.[8] The proposed budget for the teach-out included payments for the use and occupancy expenses to landlords of the affected school facilities, including Tenucp, for the teach-out period in accordance with 11 U.S.C. § 365.[9]

In arguing the teach-out was in the best interests of the Debtors' estates, the Trustee stated, among other things, that there were prospective buyers for the schools, and that the teach-out would enhance the value of the estates and provide the Trustee time to market the businesses as a going

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

3

concern.[10] Tenucp did not object to the Operating Motion.[11] I granted the Operating Motion on March 19, 2009, and the schools reopened.[12]

Thereafter, the Trustee filed a motion (the "Sale Motion") seeking authority to sell the Debtors' assets to a third party (the "Buyer"), and to assume and assign certain of their real estate leases, in accordance with the terms of an Asset Purchase Agreement (the "APA"). The Sale Motion provided that the Trustee would assume and assign to the Buyer the leases for ten of the Debtor's school locations (the "Acquired School Locations").[13] The Acquired School Locations were identified on a schedule attached to the APA.[14] The Lease was not identified as one of the Acquired School Locations, but rather, it was identified on another schedule attached to the APA as an "equipment location," meaning the leasehold was not being assumed and that it contained equipment, furniture, furnishings, and fixtures to be purchased by the Buyer.[15]

With respect to use and occupancy charges for the equipment locations, the Sale Motion provided that "under the National [City] Settlement, National [City] shall be responsible for payment of any Use and Occupancy Charges from the date any teach-out ends at the various school locations, until May 31, 2009.[16] Commencing June 1, 2009, Robinson Media [the Buyer] will be responsible

---

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

for any Use and Occupancy Charges incurred because of any Equipment remaining at any Equipment Location."[17] The APA similarly provided that the Debtors' estates would be responsible for payment of any use and occupancy charges incurred at the equipment locations from the closing date through May 31, 2009, in accordance with a carve-out and settlement agreement with National City, and that, commencing June 1, 2009, the Buyer would be responsible for paying any use and occupancy charges incurred because of equipment remaining at any of the equipment locations.[18]

Along with the Sale Motion, the Trustee also filed a motion (the "Settlement Motion") seeking to approval of a settlement agreement between the Trustee and National City, wherein National City agreed to fund certain administrative expenses of the Debtors' estates by carving out such expenses from its security interest in the sale proceeds.[19] This carve-out agreement also provided for use and occupancy charges for equipment locations to be paid through May 31, 2009.[20] Tenucp did not object to either the Sale Motion or the Settlement Motion, and I granted them on May 6, 2009.[21]

On May 4, 2009, prior to the hearing on the Sale Motion, the Trustee filed an emergency motion (the "Motion to Extend") seeking to extend the deadline to assume or reject certain unexpired real estate leases to June 4, 2009.[22] On appeal, the Panel noted that the Motion to Extend appeared

---

[17] *Id.* at 822.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

to be based upon a mistaken premise that the deadline for assumption or rejection of leases would have expired on May 5, 2009, rather than July 13, 2009, based upon a misapplication of the pre-2005 amendment version of 11 U.S.C. § 365(d)(4).[23] In any event, the Motion to Extended provided that: "Pursuant to the Sale Motion and related filings, either the prospective buyer, or any successful bidder, has until the Closing Date, as that term is defined under the Asset Purchase Agreement, to designate leases for assumption and assignment. Leases not designated for assumption will be deemed rejected as of the extended deadline date [of June 4, 2009]."[24] I entered an endorsed order extending the deadline to June 4, 2009 the same day.[25]

The sale closed, and thereafter, on June 3, 2009, the Trustee sent an email to Tenucp providing an accounting of the proposed amount of use and occupancy to be paid for the period of April 4, 2009, the end of the teach-out period, through May 23, 2009, the date the buyer removed the equipment from the premises.[26] The Trustee indicated that the payment would be an "accord and satisfaction of all monies owed by the estate for any administrative rent expenses."[27] The Trustee also stated: "[I]f you have any dispute with the amount, you must let me know by noon tomorrow."[28] It is unclear whether Tenucp actually received this email as there was a spelling mistake in the email

---

[23] *Id.* at 822 n.3.

[24] *Id.* at 822.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

6

address.[29]

On June 5, 2009, the Trustee sent checks to the landlords of the equipment locations, including Tenucp, along with a letter stating that "[t]his payment is made if [sic] full accord and satisfaction of any and all administrative expense claims against the Bankruptcy Estates . . . . All leases that were not assumed pursuant to the sale order have now been rejected."[30]  Additionally, Tenucp's check had the following notation: "Accord and Satisfaction of administrative rent and expenses for 4/4-5/23/09 (Universal)."[31]  According to the Trustee, Tenucp did not object to the proposed payment or otherwise express any dissatisfaction with the process or amount paid for use and occupancy, and promptly cashed the check on June 9, 2009.[32]

Three months later, Tenucp filed a request for payment of an administrative claim in the amount of $51,455, for amounts due and owing under the Lease for a period of March 13, 2009 through July 13, 2009.[33]  Tenucp attached the following breakdown of its claim:[34]

---

[29] *Id.*  The parties agree that the domain name was correctly spelled but the recipients' name was not.  The email was not returned as undeliverable, so it is unclear who, if anyone, received the email.  Regardless, because my ruling was based upon the "various pleadings" in this case, I need not resolve this issue.

[30] *Id.*

[31] *Id.* at 822-823.

[32] *Id.* at 823.

[33] *Id.*

[34] Docket No. 142 at Ex. A.

| Date | Rent | Opex | Above Standard Charges | Electricity | Total | Payments Received |
|---|---|---|---|---|---|---|
| March 13, 2009 | $14,085.29 | $562.32 | | | | $24,261.00 |
| April-09 | $22,548.82 | $900.20 | $5.00 | $345.51 | | |
| May-09 | $22,548.82 | $900.20 | $5.00 | $174.37 | | |
| June-09 | $12,777.66 | $900.20 | | $128.14 | | |
| | $10,056.03 | | | | | $34,406.67 |
| July-09 | $23,206.22 | $900.20 | | $78.69 | | |
| | $105,222.84 | $4,163.12 | $10.00 | $726.71 | $110,122.67 | $58,667.67 |
| | | | | | Total Due | $51,455.00 |

The claim was premised on Tenucp's assertion that the Trustee had failed to assume or reject the Lease timely and therefore it was deemed rejected as a matter of law on July 13, 2009 pursuant to 11 U.S.C. § 365(d)(4).[35]

The Trustee objected to Tenucp's request for payment, arguing that she had reached an accord and satisfaction with Tenucp that established an agreed upon payment for its administrative claim and, therefore, that Tenucp's claim should be denied.[36] Alternatively, the Trustee requested that the bankruptcy court retroactively approve the rejection of the Lease as of June 4, 2009 (the extended deadline for assuming or rejecting leases, as set forth in the order granting the motion to extend), on an equitable basis, arguing that prior pleadings such as the operating motion, the sale motion, the settlement motion, and the motion to extend, clearly provided notice to Tenucp of the Trustee's intent to reject the Lease.[37]

---

[35] *Id.*

[36] *Id.*

[37] *Id.*

8

After a non-evidentiary hearing, I found that Tenucp effectively had notice through various pleadings that its rights under the Lease would end on May 23, 2009 and that the Lease rejection was effective as of that date.[38] Specifically, I stated: "[a]s to the question of whether this landlord received notice, having reviewed the various pleadings in the case, I think this landlord knew exactly what was going on, and that whatever rights there were would be terminated as of the May 23rd date."[39] I further held that if it was necessary to resort to equitable relief, I would do so, stating: "the landlord had notice; and if the landlord had notice, then equitably, it was the functional equivalent of rejection of the lease as of the May 23rd date, and I would so rule under [the leading First Circuit case] *Thinking Machines*."[40] Having concluded that the rejection was effective May 23, 2009, I did not reach the issue of the Trustee's purported accord and satisfaction.[41] On November 6, 2009, Tenucp filed a timely appeal of my order denying Tenucp's administrative claim.[42]

On May 24, 2010, the Panel entered a memorandum of decision affirming my order in part and reversing in part, and remanding the matter for further proceedings. It agreed that the Trustee's motions, such as the Operating Motion, the Sale Motion, the Settlement Motion and, most importantly, the Motion to Extend, provided sufficient notice to Tenucp of the Trustee's intent to reject the Lease as of June 4, 2009, and concluded that I had the equitable authority to establish a

---

[38] *Id.*

[39] *Id.*

[40] *Id.  See Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1028 (1st Cir.1995).

[41] *In re GCP CT Shool Acquisition, LLC*, 429 B.R. at 823.

[42] *Id.*

retroactive rejection date.[43] Nonetheless, the Panel found that I abused my discretion by establishing May 23, 2009 as the effective date of rejection because the May 23, 2009 date did not appear in any pleadings, but only the email which Tenucp may not have received and the accounting sent to all the equipment location landlords.[44] Accordingly, it remanded the matter back for a determination of the effective date of the rejection.[45] The Panel further noted that I may consider whether the Trustee's accord and satisfaction argument is applicable to determining the date of the rejection.[46]

Thereafter, I conducted a status conference on July 7, 2010, at the conclusion of which, I took the matter under advisement. The parties subsequently filed post-status conference briefs.

### III. POSITIONS OF THE PARTIES

Tenucp

On remand, Tenucp argues that the Panel's decision establishes June 4, 2009 as the date of rejection for equitable purposes because the only equitable alternative, namely, May 23, 2009, was already rejected by the Panel. As such, Tenucp asserts that it is entitled to the amounts due and owing under the lease through June, 2009.

Additionally, Tenucp contends that the Trustee cannot prove an accord and satisfaction under the California Commercial Code because no dispute existed between the parties prior to June 4, 2009. Tenucp argues the Trustee is merely manufacturing a dispute by applying the subsequent claim litigation retrospectively to the payment tendered in May, 2009. Moreover, because the

---

[43] *In re GCP CT School Acquisition, LLC*, 429 B.R. at 833.

[44] *Id.* at 832-833.

[45] *Id.* at 833.

[46] *Id.*

10

Trustee lacked any right to unilaterally terminate payments prior to June 4, 2009, Tenucp asserts no bona fide dispute could have existed. Alternatively, Tenucp notes that, by its own terms, the payment does not purport to cover any period beyond May 23, 2009 and is thus ambiguous with respect to the remainder of Tenucp's claim.

<u>The Trustee</u>

Contrary to Tenucp's assertions, the Trustee argues that the Panel did not establish June 4, 2010 as the date of retroactive rejection, but expressly remanded so that I could, in my discretion, determine whether that date or May 31, 2009, the date referenced in the Sale Motion and the Settlement Motion, is appropriate. Furthermore, she asserts, the Panel expressly stated that I may consider the applicability of the accord and satisfaction issue, possibly bypassing the need to determine a retroactive rejection date at all. In support, she argues that she notified Tenucp that the June 5, 2009 check was an accord in satisfaction of all administrative rent owed on account of the Lease as evidenced by a notation to that effect on the check and the accompanying letter. As such, she contends that Tenucp's prompt cashing of the check and lack of a timely objection constituted acceptance of the amount sent. Although Tenucp asserts that there was no dispute at the time of the purported accord and satisfaction, the Trustee argues that the subsequent claim litigation and appeal are prima facie evidence of such a dispute. Moreover, she relies on *Potter v. Pac. Coast Lumber Co. of California*, for the proposition that a creditor's first notice of a dispute regarding the amount owed can be a check for a lesser amount.[47]

If I am not persuaded by her accord and satisfaction argument, the Trustee urges me to establish June 4, 2009 as the rejection date and prorate Tenucp's claim such that only the rent due

---

[47] *Potter v. Pac. Coast Lumber Co. of California*, 37 Cal.2d 592 (1951).

before the lease rejection date is entitled to administrative expense priority.

## IV. DISCUSSION

To briefly set the stage for the present dispute, 11 U.S.C. § 365(a) allows a trustee, subject to the court's approval, to assume or reject any executory contract or unexpired lease of the debtor.[48] Generally, the trustee must make the decision to assume or reject a lease within 120 days after the entry of an order for relief, failing which, the lease is deemed rejected.[49] Until the lease is rejected, however, the trustee must "perform timely all obligations required under the lease, particularly the obligation to pay rent at the contract rate until the lease is rejected, and gives the lessor an administrative claim for such amounts."[50]

As explained by the Panel, the United States Court of Appeals for the First Circuit in *Thinking Machines* held that "court approval is a condition precedent to the effectiveness of a trustee's rejection of a nonresidential lease under § 365(a)."[51] As such, a trustee seeking to reject a lease must file "a formal motion to that effect,"[52] but "nothing requires that the notice take the form of a specific motion entitled 'motion to reject.' The substance of the motion, not the form, governs."[53] Effectively, the motion need only provide reasonable notice to an affected party

---

[48] 11 U.S.C. § 365(a).

[49] 11 U.S.C. § 365(d)(4).

[50] *In re GCP CT School Acquisition, LLC*, 429 B.R. at 824. *See* 11 U.S.C. § 365(d)(3).

[51] *Id.* at 825 (*citing In re Thinking Machs. Corp.*, 67 F.3d at 1025).

[52] *In re Thinking Machs. Corp.*, 67 F.3d at 1026 (*citing* Fed. R. Bankr. P. 6006 and 9014).

[53] *In re GCP CT School Acquisition, LLC*, 429 B.R. at 826 (*citing* 10 Collier on Bankruptcy, ¶ 6006.01[3][a] (15th ed.1998)).

regarding the disposition of its unexpired lease.[54] The First Circuit also set forth a "single black-letter rule" with respect to the effective date for lease rejections: "rejection under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively."[55]

With these rules in mind, the Panel concluded that I appropriately found that the pleadings filed in this case put Tenucp on notice of the Trustee's intent to reject the Lease, but that I erred by determining the rejection was effective May 23, 2009. While the Trustee is correct that the Panel did not, as Tenucp suggests, determine that June 4, 2009 is the appropriate rejection date, I note that in the absence of her accord and satisfaction argument, she does not dispute such a finding.

The pleadings reference two dates: May 31, 2009 and June 4, 2009. I concur with the parties and find that June 4, 2009 is the appropriate rejection date. Although both the Sale Motion and Settlement Motion referenced the payment of use and occupancy charges at the equipment locations until May 31, 2009, the Motion to Extend, which was filed after those motions, stated unequivocally that "[l]eases not designated for assumption will be deemed rejected as of the extended deadline date [of June 4, 2009]."[56] This motion, which in substance was a "motion to reject," provided clear notice to Tenucp of the disposition of the Lease, namely, that if it was not assumed prior to June 4, 2009, it was deemed rejected on that date. Reliance on the May 31, 2009 date, on the other hand, would create an aberrant result whereby the prospective buyer or any successful bidder would have been able to assume the Lease between June 1, 2009 and June 4, 2009 despite the Trustee's prior

---

[54] *Id.*

[55] *In re Thinking Machs. Corp.*, 67 F.3d at 1029.

[56] Docket No. 99 at ¶ 7.

13

rejection.

Nonetheless, the Trustee seeks to establish an earlier rejection date by virtue of an accord a satisfaction. Both parties agree that California law applies,[57] which provides in relevant part:

> If a person against whom a claim is asserted proves that (1) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (2) the amount of the claim was unliquidated or subject to a bona fide dispute, and (3) the claimant obtained payment of the instrument, . . . the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.[58]

"Because the doctrine of accord and satisfaction operates as an affirmative defense, the burden of proof rests on the [Trustee]."[59] Although Tenucp asserts that the check and accompanying letter were ambiguous in as much as they do not purport to apply to any period beyond May 23, 2009, the primary disagreement between the parties is whether the claim was subject to a "bona fide dispute."

The Trustee points to the subsequent litigation regarding the amount of Tenucp's administrative claim as *prima facie* evidence of a dispute. This "evidence," however, only demonstrates the existence of a dispute *after* the purported accord and satisfaction. In response, the

---

[57] Sections 1521 though 1526 of the California Civil Code recognize a theory of accord and satisfaction whose elements have been developed through case law. See Cal. Civ. Code §§ 1521-1526; *Potter v. Pac. Coast Lumber Co. of California*, 37 Cal.2d at 597. In 1992, however, the California legislature enacted the California Uniform Commercial Code. For the most part, the Cal. Com. Code § 3311 is consistent with the law as it existed prior to 1992 with the exception whether a creditor may "opt out" of an accord and satisfaction by striking such a notation on a check tendered in full satisfaction. *See Woolridge v. J.F.L. Elec., Inc.*, 96 Cal.App.4th Supp. 52, 58-59 (2002). Therefore, the distinction between the two is not germane to the present dispute.

[58] Cal. Com. Code. § 3311(a), (b).

[59] *Jones v. Baltimore Life Ins. Co.*, No. S-06-1505, 2007 WL 1713250 *10 (E.D. Cal. June 12, 2007) (*citing Rabinowitz v. Kandel*, 1 Cal.App.3d 961, 965 (1969)).

Trustee cites *Potter* for the proposition that a creditor's first notice of a dispute regarding the amount owed can be a check for a lesser amount.[60] Even so, the Trustee's argument remains fatally flawed.

The *Potter* case cited by the Trustee states that "'it matters not that there was no solid foundation for the dispute' as the test is whether 'the dispute was honest or fraudulent.'"[61] Indeed, "[a] bona fide dispute is an honest dispute between the parties, based on disagreement regarding the validity or fairness of the contract, not based simply on the 'mere pretense' of the debtor attempting to avoid a payment which he clearly owes."[62] In the absence of a bona dispute, the "[p]erformance of a legal duty to a promisor which is neither doubtful nor the subject of honest dispute is not consideration."[63]

Here, even if the Trustee established the existence of a dispute by virtue of the check and accompanying letter, she has not demonstrated that it was honest. In fact, the Trustee has offered no explanation why the accord and satisfaction sought to limit Tenucp's claim to amounts incurred prior to May 23, 2009.[64] An offer to pay less than is contractually due, without more, is not a bona

---

[60] *Potter v. Pac. Coast Lumber Co. of California*, 37 Cal.2d at 600. *But see Lucky United Props. Investment*, 185 Cal.App.4th 125 (2010) (tender of a lesser amount, by itself, does not evidence a dispute subject to accord and satisfaction); *In re the Marriage of Sabine and Toshio*, 153 Cal.App.4th 1203 (2007) (offer to pay less than one-third of a claim in full release is not an accord and satisfaction).

[61] *Potter v. Pac. Coast Lumber Co. of California*, 37 Cal.2d at 597 (*quoting B. & W. Eng'g Co. v. Beam*, 23 Cal.App. 164, 171 (1913)).

[62] *Jones v. Baltimore Life Ins. Co.*, 2007 WL 1713250 at *11.

[63] *In re the Marriage of Sabine and Toshio*, 153 Cal.App.4th at 1215 (*quoting* Restatement (Second) Contracts, § 73 (1981)).

[64] I note, however, that in the email Tenucp may or may not have received, the Trustee indicated that she selected this date because it was the date by which the buyer had removed all equipment from the leasehold.

fide dispute and does not give rise to an accord and satisfaction.[65] Ultimately, the Trustee's actions amount to nothing more than a unilateral bad faith attempt to retroactively reset the rejection date by approximately two weeks the day after the Lease had been deemed rejected.[66]

Having determined that the Lease was rejected on June 4, 2009, the final issue before me is the amount of Tenucp's administrative claim. Because the Lease provides that rent, comprised of a base rent amount plus operating expenses and utilities charges, is due the first of each month, Tenucp asserts that it is entitled to the full rent due for the month of June.[67] In contrast, the Trustee argues that I should prorate the rent such that only those amounts due for the pre-rejection period are entitled to administrative expense priority.

Section 365(d)(3) provides, in relevant part, that

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.[68]

There is, however, a substantial split of authority as to what constitutes an obligation "arising from and after the order for relief," resulting in a divergence in the application of this section.[69] Put

---

[65] *See Lucky United Props. Investment*, 185 Cal.App.4th at 149-151; *In re the Marriage of Sabine and Toshio*, 153 Cal.App.4th at 1215; *Berger v. Lane*, 190 Cal. 443, 448 (1923).

[66] *See In re Thinking Machs. Corp.*, 67 F.3d at 1025 (court approval is a condition precedent to rejection under 11 U.S.C. § 365(a)).

[67] *See* Claim No. 139.

[68] 11 U.S.C. § 365(d)(3).

[69] *Cf. In re Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125 (7th Cir.1998); *El Paso Props. Corp. v. Gonzales (In re Furr's Supermarkets, Inc.)*, 283 B.R. 60, 70 (B.A.P. 10th Cir. 2002); *In re NETtel Corp., Inc.*, 289 B.R. 486 (Bankr. D.D.C. 2002); *Newman v. McCrory Corp. (In re McCrory Corp.)*, 210 B.R. 934, 939 (S.D.N.Y. 1997); *Child World, Inc. v.*

simply, the term "obligation" is not defined in the Bankruptcy Code and the majority of courts have concluded that its usage is ambiguous because "[a] debtor's 'obligation' under a nonresidential real property lease may arise as it is accrued, or it may arise when the landlord submits the bill to the debtor-tenant."[70] Attempting to resolve this ambiguity by reference the statute's legislative history, these courts find that "Congress sought only to ensure that a landlord received 'current payment' for 'current services,'"[71] and that:

---

*Campbell/Massachusetts Trust (In re Child World, Inc.)*, 161 B.R. 571 (S.D.N.Y. 1993); *Heathcon Holdings, LLC v. Dunn Indus., LLC (In re Dunn Indus., LLC)*, 320 B.R. 86, 90 (Bankr. D. Md. 2005); *In re Ames Dep't Stores, Inc.*, 306 B.R. 43, 65 (Bankr. S.D.N.Y. 2004); *In re Travel 2000, Inc.*, 264 B.R. 444 (Bankr. W.D. Mich. 2001); *In re Learningsmith, Inc.*, 253 B.R. 131 (Bankr. D. Mass. 2000); *In re All for A Dollar, Inc.*, 174 B.R. 358 (Bankr. D. Mass. 1994); *In Almac's, Inc.*, 167 B.R. 4, 8 (Bankr. D.R.I. 1994); *In re Ames Dep't Stores, Inc.*, 150 B.R. 107 (Bankr. S.D.N.Y. 1993) (cases holding the obligation arises as it accrues) with *HA-LO Indus., Inc. v. CenterPoint Props. Trust*, 342 F.3d 794, 797-800 (7th Cir.2003); *CenterPoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 208-12 (3rd Cir. 2001); *Koenig Sporting Goods, Inc. v. Morse Road Co. (In re Koenig Sporting Goods, Inc.)*, 203 F.3d 986, 989 (6th Cir. 2000); *Burival v. Creditor Comm. (In re Burival)*, 406 B.R. 548, 554 (B.A.P. 8th Cir. 2009); *In re Krystal Co.*, 194 B.R. 161, 163-64 (Bankr. E.D. Tenn. 1996) (cases holding the obligation arises on the billing date). Notably, the split is so dramatic that the United States Court of Appeals for the Seventh Circuit has held that the billing date is determinative for rent, but taxes should be prorated. *See HA-LO Indus., Inc. v. CenterPoint Props. Trust*, 342 F.3d at 797-800; *In re Handy Andy Home Improvement Centers, Inc.*, 144 F.3d at 1125.

[70] *In re Phar-Mor, Inc.*, 290 B.R. 319, 324 (Bankr. N.D. Ohio 2003). *See, e.g., In re Handy Andy Home Improvement Centers, Inc.*, 144 F.3d at 1125; *In re Furr's Supermarkets, Inc.*, 283 B.R. at 70; *In re NETtel Corp., Inc.*, 289 B.R. at 486; *In re McCrory Corp.*, 210 B.R. at 939; *In re Child World, Inc.*, 161 B.R. at 575; *In re Dunn Indus., LLC*, 320 B.R. at 90; *In re Ames Dep't Stores, Inc.*, 306 B.R. at 65; *In re Travel 2000, Inc.*, 264 B.R. at 444; *In re Learningsmith, Inc.*, 253 B.R. at 133-134; *In re All for A Dollar, Inc.*, 174 B.R. at 361; *In Almac's, Inc.*, 167 B.R. at 8; *In re Ames Dep't Stores, Inc.*, 150 B.R. at 109. These cases have been referred to as the majority position, but in light of the holdings of the United States Court of Appeals for the Third and Seventh Circuits and the United States Bankruptcy Appellate Panel for the Sixth and Eighth Circuits, it is unclear whether this position is still the majority.

[71] *In re Phar-Mor, Inc.*, 290 B.R. at 325 (*citing Child World, Inc. v. The Campbell/Massachusetts Trust (In re Child World, Inc.)*, 161 B.R. 571, 575 (S.D.N.Y. 1993)).

> Nothing in the legislative history indicates that Congress intended § 365(d)(3) to overturn the long-standing practice under § 503(b)(1) of prorating debtor-tenants' rent to cover only the postpetition, prerejection period, regardless of billing date.
>
> Moreover, the logic of requiring debtor-tenants to pay for the "current services" their landlords must provide during the postpetition, prerejection period dictates that to the extent such payments consist of rent, they should be prorated to cover only the postpetition, prerejection period. Allowing landlords to recover for items of rent which are billed during the postpetition, prerejection period, but which represent payment for services rendered by the landlord outside this time period, would grant landlords a windfall payment, to the detriment of other creditors, without any support from the legislative history.[72]

This view is known as the "accrual approach," as these courts require payment under 11 U.S.C. § 365(d)(3) of only those obligations that accrued during the pre-rejection period without regard to the billing date.[73]

In contrast, "[a] substantial minority has held that under § 365(d)(3), debtor-tenants under a nonresidential property lease must pay in full all bills received during the post-petition, pre-rejection period, regardless of when those charges accrued."[74] These courts find no ambiguity in 11 U.S.C. § 365(d)(3), concluding that "obligations" arise as they become due under the terms of the lease.[75] This is known as the "billing date approach."[76]

Having reviewed the case law cited above, particularly Judge Boroff's decision in *In re All*

---

[72] *In re Child World, Inc.*, 161 B.R. at 575-576. *See, e.g., In re Ames Dep't Stores, Inc.*, 306 B.R. at 65; *In re All for A Dollar, Inc.*, 174 B.R. at 361.

[73] *In re Phar-Mor, Inc.*, 290 B.R. at 324 n. 5.

[74] *Id.* at 325.

[75] *See, e.g., HA-LO Indus., Inc. v. CenterPoint Props. Trust*, 342 F.3d at 797-800; *In re Montgomery Ward Holding Corp.*, 268 F.3d at 208-12; *In re Koenig Sporting Goods, Inc.*, 203 F.3d at 989; *In re Burival*, 406 B.R. at 554; *In re Krystal Co.*, 194 B.R. at 163-64.

[76] *In re Phar-Mor, Inc.*, 290 B.R. at 326 n.6.

*for A Dollar, Inc.*, I agree with those courts applying the "accrual approach" to obligations arising during the post-petition, pre-rejection period. Though I will not repeat the detailed rationales offered by those courts, suffice it to say that prorating post-petition, pre-rejection obligations serves the legislative intent of providing landlords with a "current payment" for "current services" without producing results that are inconsistent with the Bankruptcy Code.

Using the table provided as an exhibit to the request for payment as a starting point, Tenucp seeks $59,182.93 in base rent, plus $2,362.72 for "Opex,"[77] $10.00 for "above standard charges," and $519.88 for electricity, for a total of $62,075.53 through May, 2009. As the Lease was rejected on June 4, 2009, Tenucp is entitled to an additional four days of use and occupancy charges, namely, $2,965.32 for base rent,[78] plus $118.38 for "Opex,"[79] and $17.09 for

---

[77] Presumably, this notation refers to "operating expenses" which the Lease classifies as "additional rent." *See* Claim No. 139 at ¶ 4.2.4.

[78] $22,548.82 (Monthly Base Rent)
  x 12
 $270,585.84 (Annualized Rent)
  ÷ 365
  $741.33 (per diem)
  x 4
 **$2,965.32 (4 Days Rent)**

[79] $900.20 (Monthly Opex)
  x 12
  $10,802.40 (Annualized Opex)
  ÷ 365
  $29.60 (per diem)
  x 4
 **$118.38 (4 Days Opex)**

19

electricity,[80] for a total of $3,100.79. Tenucp's adjusted total administrative claim is therefore $65,176.32. The Trustee, however, previously made two payments totaling $58,667.67, leaving a remaining balance of only $6,508.65 on account of Tenucp's administrative claim.

## V. CONCLUSION

In light of the foregoing, I will enter an order overruling the Trustee's objection in part and allow Tenucp an administrative expense claim in the amount of $6,508.65.

*[signature]*

_____
William Hillman
United States Bankruptcy Judge

Dated: October 28, 2010

---

[80] $128.14 (June Electric Charges)
÷ 30 (Days in June)
$4.27 (per diem)
x 4
**$17.09 (4 Days of Electricity)**